UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BIENVENIDO VELASQUEZ,

        Plaintiff,

– against –

UNITED STATES POSTAL SERVICE,
UNITED STATES OF AMERICA, and
JANE DOE (intending to be the driver of the
USPS vehicle),

        Defendants.

**MEMORANDUM, ORDER AND JUDGMENT**

14-CV-1397

**Parties**

**Bienvenido Velasquez**

**United States of America**
**United States Postal Service**
**Jane Doe**

**Appearances**

Souren Avetick Israelyan
Law Office of Souren A. Israelyan
39 Broadway
Suite 950
New York, NY 10016
646-459-7556
Fax: 888-217-1948
Email: si@israelyanlaw.com

Jolie Alexandra Hall Apicella
United States Attorney's Office
for the Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6528
Fax: 718-254-6381
Email: jolie.apicella@usdoj.gov

Orelia E. Merchant
United States Attorney's Office
for the Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820
718-254-6058
Fax: 718-254-6081
Email: Orelia.merchant@usdoj.gov

1

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Table of Contents**

I. Introduction ........................................................................................................................... 2
II. Findings of Fact .................................................................................................................... 3
   A. Accident ........................................................................................................................... 3
   B. Injury ................................................................................................................................ 9
III. Findings of Law .................................................................................................................. 10
   A. New York Negligence and Motor Vehicle Law............................................................. 10
   B. Application of Law to Facts ........................................................................................... 12
IV. Damages.............................................................................................................................. 13
   A. Past Medical Expenses and Past Lost Earnings ............................................................. 13
   B. Future Medical Expenses and Future Lost Earnings...................................................... 14
   C. Pain, Suffering, and Loss of Enjoyment;
      Lost Ability to Complete Household Responsibilities.................................................. 16
V. Damages, Interest, Costs and Disbursements ..................................................................... 19
VI. Conclusion ........................................................................................................................... 20

**I.   Introduction**

This case is about a traffic accident that would not have happened had either vehicle operator exercised reasonable care. Plaintiff, a motorcyclist, was not paying attention while riding too fast on his way to work. As he approached an intersection controlled by a traffic light, a United States Postal Service ("USPS") truck was waiting to make a left turn across the lane in which plaintiff was traveling. The truck driver unreasonably proceeded into the intersection and into plaintiff's lane, forcing him to take emergency evasive action; he lost control, was hurled from his motorcycle, sustaining serious injuries.

On March 3, 2014, plaintiff commenced this action against the USPS. 28 U.S.C. §§ 2671 *et seq.* ("FTCA"); Compl., March 3, 2014, ECF No. 1. He alleges injuries as a result of the USPS truck driver's negligence. Compl., March 3, 2014, ECF No. 1. Defendants filed an

answer on May 19, 2014.  Answer, May 19, 2014, ECF No. 5.  After full discovery, the case was tried by the court between October 6th and 16th, 2015.

Both drivers were equally negligent.  Each party is responsible for 50% of the damage.  Findings of fact and law are set forth below.  *See* Fed. R. Civ. P. 52(a).

## II.     Findings of Fact

### A.     Accident

On May 30, 2013, at approximately 4:30 p.m., USPS employee Kenya Little was operating a two-ton mail delivery truck in the vicinity of Louisiana Avenue and Twin Pines Drive, in Brooklyn.  Ms. Little was operating the truck in the normal performance of her duties.  She was proceeding south on Louisiana Avenue when she stopped at the red light marking the intersection with Twin Pines Drive.  Below is a photograph of the intersection looking south:



**Pl.'s Trial Ex. 5.007.**

Plaintiff was traveling north on Louisiana Avenue when he approached the intersection with Twin Pines Drive. Below is a photograph of the intersection of Louisiana Avenue and Twin Pines Drive looking north:



**Pl.'s Trial Ex. 5.001.**

According to plaintiff, he had been traveling at 25 M.P.H. northbound on Louisiana Avenue. He testified that the light was green when he was approximately half a mile from the intersection. Then, when he was approximately 150 yards from the intersection, plaintiff testified that he looked up and saw the light was red. At that point plaintiff says he switched the

motorcycle into neutral and prepared to stop. When plaintiff was ten feet from the intersection, he says the light turned green, so he switched gears and began to proceed straight into the intersection. Plaintiff testified that when he entered the intersection he was traveling between 5 and 10 M.P.H. and was accelerating. Trial Tr., Oct. 6, 2015, at 55:1-61:24.

Plaintiff did not keep a proper watch of the intersection and traffic signal. He did not look at the light between the time when he was, according to his testimony, traveling a half mile to less than 150 yards from the intersection. *Id.* at 56:8-59:19. Based on the nature of plaintiff's injuries, the place where the vehicles came to rest, the damage to the motorcycle, the testimony of defendant's expert, Dr. Jeffrey Ketchman, and the other evidence, the plaintiff was traveling dangerously fast when he entered the intersection and he was not keeping a proper lookout. *See* Trial Tr., Oct. 7, 2015, at 256:22-257:3. He was moving much faster than the 10 miles per hour he testified to, expecting the red light to turn green. He was not looking out and did not see the USPS truck crossing his lane until it was too late to come to a safe stop.

When the light turned green, Ms. Little entered the intersection of Louisiana Avenue and Twin Pines Drive and began to turn left onto Twin Pines Drive. She failed to look to see if anyone was coming down the lane she was turning into.

Ms. Little testified at trial that she turned the wheel of the USPS truck a little to the left, but the truck itself never crossed the center of the intersection. Trial Tr., Oct. 6, 2015, at 172:2-174:5, 176:10-12. Ms. Little was not a credible witness on this point. Ms. Little brought the front half of her truck through the center of the intersection and into the northbound lane of Louisiana Avenue in a dangerous maneuver.

Upon seeing the postal service truck enter the intersection and cross into his lane, plaintiff testified that he took evasive action in order to avoid what he believed would be a

5

collision. Plaintiff contends that he made a sharp right turn but was unable to maintain control over his motorcycle. As a result, plaintiff testified, the motorcycle fell onto its right side inside the intersection. *Id.* at 65:8-66:16. Ms. Little testified that the motorcycle fell to the ground before entering the intersection and skidded on its side into the intersection. *See id.* at 177:1-179:3; Def.'s Trial Ex. I-16.

Ms. Little's testimony is not credited. The nature of plaintiff's injuries, the damage to the motorcycle, the testimony of plaintiff and the testimony of a neutral witness all support the conclusion that the motorcycle fell inside the intersection. It had stopped and turned too sharply, reared-up as its brakes were applied as hard as possible, and entered the intersection out-of-control.

A photograph of the intersection with markings of where the motorcycle lay, as recalled by a neutral witness, is below:


**Def.'s Trial Ex. T-1.**

These markings are found to accurately represent where the motorcycle came to rest.

Plaintiff's testimony regarding how the motorcycle landed on his leg is wrong. On this point, the testimony of defendant's expert witness, Dr. Robert Meyerson, is credited; it properly analyzes the x-rays and other medical data to demonstrate that plaintiff was thrown from the motorcycle and that his knee was driven hard into the pavement when he landed:

> . . . at the low rate of speed that [plaintiff]'s saying that he was traveling with an impact of a 450-pound bicycle to the inside of his knee[, this] will cause no bony injury to this side of his knee . . . the fact that he had a fracture that's been described as a Schatzker V, a bicondylar tibial plateau . . . is only going to happen from a high energy injury where these condyles are driven simultaneously into the tibia. It's not happening because [plaintiff]'s lying on the side like he's sliding in the second base with the motorcycle hitting the inner side of his knee . . . it's a high energy injury that results in the amount of pieces that were there.
>
> . . .
>
> [T]he fact of the matter here is that the velocity that the individual is going is the key factor, not the weight, and the fact that [plaintiff] has comminution on both sides shows that it was basically produced by either a rapid deceleration or a fall from a height. In this case, it's a rapid deceleration where this bone went ramming into that bone based upon the way he fell.
>
> In addition, if the claimant or if the patient is claiming that he had a grade three shoulder separation on the opposite side, a shoulder separation only occurs from direct trauma to the shoulder. So, it remains to be explained how one is sliding on their side with a bike on their leg, how do you traumatize the opposite side. It happened because he's falling in a different manner, whether it be hand over heels or he lands on the other side . . .
>
> I can certainly say that the constellation of injuries that he had is not consistent with a low rate of speed with the bike falling on the inner side of his knee which would produce a different fracture pattern than what we observed . . .
>
> . . .
>
> *I am sure that [the injury] occurred by [plaintiff] landing hard* on his left side and not on his right side. So, again, the motorcyclist *falling on his right knee forcing him down* this way, and he is, at

7

> least in descriptions I've read, it's almost like he was – I mean at five miles an hour, you're not going to fall on one side and then flip over and fall on the other side.
>
> . . .
>
> I think *he was more tumbling because of the rate of speed* that he was traveling rather than sliding on his side. I agree that he was not sliding on his side or else he would have had a different mechanism of injury. By virtue of the fact of the amount of pieces that were broken in two shows that *he was traveling at a faster rate of speed than what has been stated*.

Trial Tr., Oct. 13, 2015, at 533:19-537:20 (emphasis supplied). The plaintiff fell off the motorcycle, tumbling on the ground. His knee was driven into the pavement, causing the injury.

There was never any physical contact between the motorcycle and the truck. The motorcycle sustained some minor damage to its right side, but did not slide for an appreciable time as claimed by defendant.



**Pl.'s Trial Ex. 41** (enhancements added).

B.     **Injury**

Plaintiff contends that when the motorcycle fell, it trapped his right leg underneath it, causing a significant injury to his right knee and left shoulder. In fact, the nature of the injury to plaintiff's knee and the fact that it was his left, rather than right, shoulder which was also injured, indicates that plaintiff's injuries were caused by him tumbling off the motorcycle, rather than simply falling on his right side. *See* Trial Tr., Oct. 13, 2015, at 531:20-542:5.

Injury to plaintiff's right knee was severe. He suffered a comminuted and displaced type five tibial plateau fracture. Parts of plaintiff's knee had been shattered and the pieces were out of the position that they should have been in. Trial Tr., Oct. 7, 2015, at 281:24-282:15. Other injuries were relatively minor.

Before the knee could be repaired, plaintiff's doctors had to wait for severe swelling to go down. During this time plaintiff's leg was immobilized by an external fixator. The installation of the fixator involved the insertion of pins into plaintiff's tibia that would support a rod on the outside of the leg. A second surgery was required to fix the location of the pins. Once the swelling had sufficiently diminished, plaintiff underwent a third surgery for insertion of permanent metal plates.

With respect to plaintiff's left shoulder, the injury was less severe. There was a separation of the acromioclavicular joint (known as the AC joint).

These injuries do not require further surgery. The defense expert's opinion on this matter is persuasive. *See* Trial Tr., Oct. 13, 2015, at 569:19-24, 574:14-25.

9

**III.    Findings of Law**

   **A.    New York Negligence and Motor Vehicle Law**

"In a civil case, the plaintiff bears the burden of proving the elements of his claim by a preponderance of the evidence. To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true." *Brown v. Lindsay*, Nos. 08-CV-351, 08-CV-2182, 2010 WL 1049571, at *12 (E.D.N.Y. Mar. 19, 2010) (citations omitted).

The court has jurisdiction over this matter pursuant to FTCA. "The FTCA allows plaintiffs to recover damages for an injury caused by the negligence of government employees acting within the scope of their employment." *Taylor v. United States*, 121 F.3d 86, 89 (2d Cir. 1997). It is conceded that the truck driver was acting within the scope of her employment.

Under FTCA, the liability of the United States to a plaintiff for negligence is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Molzof v. United States,* 502 U.S. 301, 305 (1992). Because the accident took place within New York, the substantive law of that state applies.

Negligence is defined as acting or failing to act in an unreasonable way under the circumstances:

> Negligence is lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances; negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or from failing to do an act that a reasonably prudent person would have done under the same circumstances.

*Silva v. United States*, No. 08-CV-4114, 2010 WL 3731172, at *4 (E.D.N.Y. Sept. 20, 2010) (citing New York Pattern Jury Instructions 3d ed. ("N.Y.P.J.I.") 2:10 *et seq.* (2010)).

"To prevail on a claim of negligence under New York law, a plaintiff must establish: '(1) that a duty of care was owed by the defendant to the plaintiff; (2) that the defendant breached

that duty; (3) that the defendant's breach was a proximate cause of the plaintiff's injuries; and (4) that plaintiff was damaged.'" *Brown*, 2010 WL 1049571, at *13 (quoting *Crews v. Cty. of Nassau,* 612 F. Supp. 2d 199, 205 (E.D.N.Y. 2009)).

New York law imposes on operators of motor vehicles a duty of reasonable care taking into account the circumstances of the situation. *Goldstein v. United States*, 9 F. Supp. 2d 175, 186 (E.D.N.Y. 1998); N.Y.P.J.I. 2:77. The same duty of reasonable care is imposed on motorcyclists and four-wheeled vehicles. N.Y. Veh. & Traf. Law § 1250. "This longstanding duty requires drivers to [1] maintain a reasonably safe rate of speed, [2] have the automobile [or motorcycle] under reasonable control, [3] to keep a proper lookout under the circumstances then existing to see and be aware of what was in their view, and [4] to use reasonable care under the circumstances to avoid an accident." *Goldstein*, 9 F. Supp. 2d at 186.

The drivers of the two vehicles were entitled to protection of the New York law:

> [W]hen a defendant violates a statute that defines the degree of care to be used under certain circumstances, the violation constitutes negligence *per se* if (1) it causes the injury, (2) the plaintiff is a member of the class intended to be benefited by the statute, and (3) the statute is intended to protect against the very hazard that caused the plaintiff's injury.

*Vaselli v. United States*, No. 12-CV-06221, 2014 WL 4961421, at *5 (E.D.N.Y. Oct. 3, 2014) (quoting *Mauro v. Costco Wholesale Corp.,* No. 09-CV-1391, 2013 WL 3816731, at *4 (E.D.N.Y. July 22, 2013)).

The governing statute is New York Vehicle & Traffic Law § 1160(b). It requires care approaching and moving in an intersection:

> At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after

> entering the intersection the left turn shall be made so as to leave
> the intersection to the right of the center line of the roadway being
> entered.

N.Y. Veh. & Traf. Law § 1160. A turn described in § 1160(b) shall not be made "until such movement can be made with reasonable safety." N.Y. Veh. & Traf. Law § 1163(a). Drivers must yield the right of way to oncoming traffic before making a left turn across the oncoming traffic's lane. N.Y. Veh. & Traf. Law §§ 1111(a) & 1141; N.Y.P.J.I. 2:79.

### B. Application of Law to Facts

By crossing the center of the intersection when plaintiff was at or near the crosswalk proceeding too fast to stop safely in the oncoming lane, Ms. Little violated Sections 1111(a)(1), 1141, 1160(b) and 1163(a). *See* N.Y.P.J.I. 2:79 & 2:81. These violations represent a breach of defendant's duty of care owed to other motorists on the road. As a result of Ms. Little's actions, plaintiff – a member of the class of people who these statutes were intended to protect – was injured in the way the statutes were intended to prevent. Ms. Little's actions constitute negligence for which defendant, as her employer, is responsible.

Plaintiff was also at fault. He bore a duty "to maintain a reasonably safe rate of speed . . . [and] to keep a proper lookout under the circumstances then existing to see and be aware of what was in their view." *Goldstein*, 9 F. Supp. 2d at 186. The evidence shows that he breached this duty by failing to keep a proper lookout and by proceeding into the intersection at a rate of speed that was unsafe in light of the circumstances. But for plaintiff's breach of his duty of care, he would have been able to safely stop his motorcycle.

Plaintiff and defendant are equally at fault for plaintiff's injuries. *See* N.Y. C.P.L.R. § 1411.

## IV. Damages

### A. Past Medical Expenses and Past Lost Earnings

Plaintiff submitted medical bills demonstrating that he has incurred $280,665 in medical expenses since the date of the accident. *See* Pl.'s Trial Ex. 28. Defendant contends that plaintiff's insurance has paid $118,497.40 in full satisfaction of plaintiff's medical expenses. *See* Def.'s Trial Ex. X. Following the conclusion of the trial, plaintiff submitted a letter from his insurance company indicating that as of December 1, 2015, the insurance company's payments had increased to $119,200.45. Pl.'s Response to Def.'s Post-Trial Findings of Fact and Conclusions of Law, Dec. 18, 2015, ECF No. 79, at Ex. 2. It is proper to award damages for the amount that was actually paid, not the full amount billed. *See* N.Y. C.P.L.R. § 4545; N.Y.P.J.I. 2:301. This amount is not subject to the 50% reduction in the amount of damages awarded resulting from plaintiff's comparative fault. *See* N.Y.P.J.I. 2:301 (citing *Rodgers v. 72nd St. Assocs.*, 269 A.D.2d 258, 259 (1st Dep't 2000)).

There appears to be medical bills of $24,798.42 which may be unpaid. *See* Pl.'s Trial Ex. 28. Plaintiff has not met his burden of proving that insurance will not pay them and that he will. Thus, they have been omitted from the computation of damages.

The parties' experts disagree on the amount of wages plaintiff lost during the seven months he was out of work as a result of the accident. Plaintiff's expert calculated a total of $26,554 in lost wages, while defendant's expert estimated $31,972. Plaintiff's expert explained that the difference in the two amounts comes from taking into account inflation. *See* Trial Tr., Oct. 14, 2015, at 610:2-611:10. The defendant's expert's calculation is appropriate because of its inclusion of a reasonable inflation factor.

### B. Future Medical Expenses and Future Lost Earnings

Plaintiff's doctors opined that plaintiff is likely to need a full knee replacement and surgery on his shoulder in the future. Defendant's expert's testimony is more credible. In court plaintiff walked easily and without a cane, with good posture and no apparent pain. The defense expert's opinion on this point was as follows:

> . . . there is no clinical reason to have the hardware removed from his knee. [Plaintiff] doesn't exhibit any signs of instability, laxity that would indicate that he needs an ACL reconstruction.
>
> Regarding . . . the patient's left shoulder, the patient has full range of motion of his shoulder. He has normal rotator cuff strength in his shoulder. The standard of care for a grade three acromioclavicular separation is conservative treatment. This was indicated to the patient always by Doctor Goldman when he initiated treated him. For patients who remain symptomatic after conservative treatment, then surgery is considered. But in this case, the patient again demonstrated no restricted range of motion, symmetric to his opposite side. He demonstrated full power equal to his opposite side.
>
> So on a clinical basis, I think he has a healed AC separation. Most people don't require anything other than physical therapy. And he's never gone for physical therapy on his shoulder. It's now over two years from the date of injury and you would never consider operating on an injury that's never been treated conservatively.
>
> So the conclusions that he needs surgery on his left shoulder I certainly disagree with, and I disagree that he currently needs surgery on his right knee. I think that he's indicated basically to have gone for whatever months of therapy he went, I think three months to four months, as I saw because I think he started sometime around July and finished in November. I still think that that's a fairly inadequate amount of physical therapy for an injury of the type that he had and I think that his clinical improvement or progress, if he was able to improve strength in his leg, which obviously he lacks, would significantly improve his functional abilities.
>
> Q. Doctor Meyerson, is there any non-surgical option that you would recommend for Mr. Velasquez?

> A. I mean, I do think that he would benefit from physical therapy on both his right knee and his left shoulder. He hasn't really taken any anti-inflammatory medication of prescription strength. He might be – he may derive some improvement out of some visco supplementation which is hyaluronic acid, which also may help relieve some of the inflammation that he has in his knee.

Trial Tr., Oct. 13, 2015, at 542:21-545:13.

Observations by the court or by a jury during a trial are evidence. The trier's evaluation of the credibility, for example, of a witness who at times hobbles with a cane but at other times readily assists his attorney moving exhibits around the courtroom will be noted and given weight. The visage of a witness is taken into account. A view outside of the court during trial is also evidence. *See, e.g.*, *In re Appl. to Take Test. in Criminal Case Outside Dist.*, 102 F.R.D. 521, 524 (E.D.N.Y. 1984).

A continued course of moderate physical therapy is the appropriate treatment for plaintiff's injuries. The evidence does not support a finding that plaintiff will require more.

The total cost of weekly visits to a physical therapist for the remainder of plaintiff's expected life span has a present value of $136,000. Trial Tr., Oct. 14, 2015, 632:24-634:17. Plaintiff will also likely incur, in present dollar values, bills of $30,183 for doctor visits, $4,350 for magnetic resonance imaging scans (MRIs), and $9,900 for x-rays. *See id.* at 653:19-654:2. The total value that plaintiff is entitled to receive for future medical expenses is $180,233.

Despite plaintiff's contention that he has difficulty performing his job, the evidence indicates that he is capable of performing assigned job-related duties. *See* Def.'s Trial Ex. R-2 (showing that plaintiff worked more than 200 hours of overtime in 2014 and 2015). He is not entitled to any damages for lost future earnings based on his inability to work.

Plaintiff argues that he was in line for a promotion at his job which would have resulted in a significant salary increase. He contends that because he was out of work following the

15

accident, the position was filled by another candidate, causing him to incur significant future lost earnings. The evidence does not support the conclusion that plaintiff would have received this promotion but for his absence from work resulting from his injuries. Plaintiff is not entitled to any damages for lost future income.

    **C.    Pain, Suffering, and Loss of Enjoyment;**
          **Lost Ability to Complete Household Responsibilities**

It is not possible to establish precisely the appropriate level of damages for pain and suffering. Plaintiff has submitted examples of comparable awards:

- *DiCamillo v. City of New York*, No. 7900/1993 (N.Y. Sup. Ct., Queens County 1995): $2,500,000 for pain and suffering award ($1,000,000 for past and $1,500,000 for future pain and suffering) for comminuted tibial plateau fracture and damage to the knee cartilage requiring open reduction and internal fixation of a 56-year-old plaintiff;

- *Mouradian v. Fernandez*, No. 20358/1995 (N.Y. Sup. Ct., Queens County 1999): $10,000,000 for pain and suffering award ($3,000,000 for past and $7,000,000 for future pain and suffering) for comminuted right tibial plateau fracture with surgery involving an external fixator, atrophy and walking with a limp of a 50-year-old plaintiff;

- *Gunther v. Glass*, No. 2283/1994 (N.Y. Supreme Court, Monroe County 1999): $2,200,000 for pain and suffering award ($1,000,000 past and $1,200,000 future pain and suffering) for comminuted tibial plateau fracture with open reduction and internal fixation of a 37-year-old plaintiff;

- *Davis v. City of New York*, No. 16825/1993 (N.Y. Sup. Ct., Kings County 1999): $2,750,000 for pain and suffering award ($2,000,000 for past and $750,000 for future pain and suffering) for comminuted right tibial plateau fracture with displaced avulsion of the anterior cruciate ligament of a 21-year-old plaintiff;

- *Green v. City of New York*, No. 24351/1993 (N.Y. Sup. Ct., Bronx County 2001): $2,500,000 for pain and suffering award ($1,000,000 for past and $1,500,000 for future pain and suffering) for comminuted displaced fracture of the left lateral tibial plateau requiring an open reduction and internal fixation of a 25-year-old plaintiff;

- *Rogers v. Borda Products, Inc.*, No. 101791/2000 (N.Y. Sup. Ct., N.Y. County 2003): $1,950,000 for pain and suffering award ($250,000 for past and $1,700,000 for future pain and suffering) for right displaced bicondylar tibial plateau fracture with open reduction and internal fixation of a 48-year-old plaintiff;

16

- *Gonzalez v. City of New York*, No. 8361/1994 (N.Y. Sup. Ct., Bronx County 2003): $2,000,000 for pain and suffering award ($500,000 for past and $1,500,000 for future pain and suffering) for bicondylar tibial plateau fracture with open reduction and internal fixation of a 33-year-old plaintiff;

- *Figueroa v. HLM Electric, Ltd.*, No. 24229/2008, 38 Misc. 3d 1230(A), 967 N.Y.S.2d 866 (N.Y. Sup. Ct., Queens County 2013), *aff'd*, 121 A.D.3d 1038 (2d Dep't 2014): $2,280,000 for pain and suffering award ($1,000,000 for past and $1,280,000 for future pain and suffering) for leg fractures with three surgeries;

- *De La Cruz v. New York City Tr. Auth.*, 11 Misc. 3d 1086, 819 N.Y.S.2d 847 (N.Y. Sup. Ct., Queens County 2006), *aff'd*, 48 A.D.3d 508 (2d Dep't 2008): $3,000,000 for pain and suffering award ($1,000,000 for past and $2,000,000 for future pain and suffering) for leg fractures requiring three surgeries;

- *Clotter v. New York City Tr. Auth.*, 68 A.D.3d 518 (1st Dep't 2009): $1,000,000 for pain and suffering award ($500,000 for past and $500,000 for future pain and suffering) for an avulsion fracture and quadriceps rupture with single surgery; and

- *Mohamed v. New York City Tr. Auth.*, 80 A.D.3d 677 (2d Dep't 2011): $7,000,000 for pain and suffering award ($4,000,000 for past and $3,000,000 for future pain and suffering) for an 18-year-old who sustained leg fractures that required multiple surgeries.

The defendant submitted examples of awards from cases it argues are comparable to this one:

- *Goldstein v. United States*, 9 F. Supp. 2d 175 (E.D.N.Y 1998): Plaintiff sustained fractures to right arm and shoulder, right knee and leg, resulting in surgeries to the right knee, right heel and right ankle, and a twelve day hospital stay and a rehabilitation hospital for five weeks with physical therapy twice per day. Plaintiff required surgical removal of hardware in knee within three years, a hospital bed sent to her home, a wheelchair ramp added to her home, and a cane to walk. Plaintiff was awarded $450,000 past pain and suffering and $230,000 future pain and suffering;

- *Ackerman v. Gross*, No. 6137/2009 (N.Y. Sup. Ct., Erie County 2011): Plaintiff sustained a comminuted distal tibia and fibula fractures. She underwent an open reduction and internal insertion of hardware and contended that she will suffer permanent pain and limitations. The jury awarded $100,000 for past pain and suffering and $50,000 for future pain and suffering;

- *Messina v. Messina*, No. 24323/2002 (N.Y. Sup. Ct., Suffolk County 2004): Plaintiff sustained a comminuted tibial plateau fracture, which was repaired via internal fixation and bone graft treatment and recuperation lasted seven months. Plaintiff was in a wheelchair for three months, walker for 3 weeks, and then crutches and a three point cane for another three months. She underwent physical therapy for 21 sessions at home before

17

starting outpatient physical therapy for three months thereafter. She claimed that she continued to experience problems with the knee and that her injury prevented performance of certain activities, including her teaching work. The jury awarded $100,000 for past pain and suffering;

- *Grinberg v. C&L Contracting Corp*, No. 110264/2009 (N.Y. Sup. Ct., N.Y. County 2012): Plaintiff sustained a spiral fracture of the proximal region of his left leg's fibula and a comminuted fracture of his left leg's tibia's distal region; fractures were addressed via open reduction and internal fixation. He underwent about 12 weeks of physical therapy, and his fixation hardware was removed in another surgery. Grinberg contended that he suffered residual arthritic pain. Grinberg's expert orthopedist acknowledged that Grinberg achieved an excellent recovery, but that additional surgery could be necessary. Defense expert orthopedist opined that Grinberg's arthritic pain may not be a result of the accident. Jury awarded $75,000 in past pain and suffering and $35,000 for future pain and suffering;

- *Hernandez v. NYCTA*, No. 10343/2009 (N.Y. Sup. Ct., Queens County 2011): Hernandez, a 55-year old, sustained a comminuted fracture in the knee area and required surgery. She maintained that she will permanently suffer pain and limitations and that she will require a knee replacement surgery in the foreseeable future. Hernandez was able to return to her job. The jury rendered a gross award of $175,000 for past pain and suffering and declined to render a future award;

- *Ryan v. City of New York*, No. 17791/2004 (N.Y. Sup. Ct., Queens County 2009): Ryan was taken directly from the scene of the accident to the hospital by ambulance where a spiral fracture to his left tibia and a comminuted and displaced fracture to his fibula were identified. He underwent an operation to implement an intramedullary rod in his lower leg. Follow-up care followed at an orthopedic clinic for 10 months following the accident. Ryan's doctor testified that another surgery to remove two screws placed in the initial operation would be beneficial. Ryan claimed he was unable to work as a carpenter for approximately one year, and that he was left with residual pain and weakness in the injured leg. Defense experts conceded Ryan suffered the injuries he claims during the accident, but argued Ryan made an excellent and functional recovery and should be left with little or no pain. Jury awarded $200,000 in past pain and suffering and $100,000 in future pain and suffering;

- *Bisbee v. Independent Coach Corp.*, 182 A.D.2d 661, 582 N.Y.S.2d 255 (2d Dep't 1992): affirming award of $253,000 for injury to knee which required several operations and procedures to repair and alleviate pain;

- *Castellano v. City of New York*, 183 A.D.2d 800, 584 N.Y.S.2d 114 (2d Dep't 1992): plaintiff slipped on an icy sidewalk, resulting in an injury to his knee which required two arthroscopic surgeries and forced him to retire from his job as a police officer; jury award of $500,000 for pain and suffering was found to be excessive and court ordered remittitur of damages over $200,000; and

- *Danko v. Pelham Funeral Chapel*, No. 8929/1981 (N.Y. Sup. Ct., Bronx County 1982): a 55-year-old woman sustained a fractured knee with torn ligaments and psychological injury, jury award of $500,000.

The comparative figures submitted by both sides are generally reasonable. *See Rivenburgh v. CSX Transp.*, 280 F. App'x 61, 64 (2d Cir. 2008); *Torres v. Santus LLC*, No. 11-CV-5481, 2014 WL 978431, at *6 (E.D.N.Y. Mar. 12, 2014) ("many courts look to what other fact-finders have found to be reasonable compensation"). An award for pain, lost enjoyment and lost ability to complete full household chores is based on a reasonable evaluation of the above comparative awards submitted by the parties and extended experience of the trier.

Plaintiff sustained a serious injury to his knee and a minor injury to his shoulder. He underwent three operations to repair his knee, as well as a course of physical therapy. Although future operations are not likely to be necessary, plaintiff will probably require further physical therapy.

Since the accident, plaintiff has been unable to bowl, or to contribute fully to household chores.

A reasonable amount for past pain and suffering is $900,000, and for future pain and suffering, loss of enjoyment, and lost ability to complete household chores it is $250,000, based upon general New York state compensation amounts, and the facts in the instant case.

**V.     Damages, Interest, Costs and Disbursements**

Plaintiff is entitled to an award of damages. Reduced amounts because of a finding of 50% contributory negligence are shown in parenthesis:

- Past Medical Expenses: $119,200.45

- Future Medical Expenses: $180,233 (reduced to $90,116.50)

- Past Lost Wages: $31,972 (reduced to $15,986)

19

- Future Lost Wages: $0

- Past Pain, Suffering, Lost of Enjoyment, and Lost Ability to Complete Household Chores: $900,000 (reduced to $450,000)

- Future Pain, Suffering, Lost of Enjoyment, and Lost Ability to Complete Household Chores: $250,000 (reduced to $125,000).

Plaintiff is not entitled to prejudgment interest. 28 U.S.C. § 2674.

Costs and disbursements are not awarded. Each party is equally at fault.

## VI. Conclusion

Based on the evidence, plaintiff has met his burden of proof with respect to his negligence claim. A verdict in favor of the plaintiff is entered on that claim.

The total award to plaintiff after taking into account his contributory negligence is $800,302.95. Judgment shall be entered by the Clerk of the court in this amount.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: January 7, 2016
Brooklyn, New York